152

[Cite as Abbott v. Columbus (1972), 32 Ohio Misc. 152.]

(No. 72CV-05-1540—Decided May 19, 1972.)

Common Pleas Court of Franklin County.

*Mr. James J. Hughes, Jr.,* city attorney, and *Mr. Daniel W. Johnson,* assistant city prosecutor, for respondent.

*Mr. William E. Boyland, Mr. Ronald L. Solore, Mr. Bruce A. Campbell* and *Mr. Donald B. Ruben,* for petitioners.

WRIGHT, J. Petitioners have invoked this proceeding by way of habeas corpus for the purpose of being granted reasonable bail. All of the petitioners are presently confined to jail in default of bail fixed by the Franklin County Municipal Court. Petitioners, Neiburger, J. Miernik, M. Miernik and Friedman are being held in lieu of $100,000 bond. All of the aforementioned petitioners have been charged with inciting to riot and disorderly conduct. It should be noted that conviction for these offenses could lead to prison sentences in the maximum amount of 90 days on disorderly conduct. Conviction for inciting to riot, depending upon whether there is a later disposition as to treat this matter as a felony or a misdemeanor, and there is a reason to believe the former is the case, could lead to maximum sentences of either not less than one nor more

than three years in prison or a fine of not more than $1000 and imprisonment for not more than one year.

Petitioner Abbott is charged with second degree riot, disorderly conduct and malicious destruction of property. Conviction on these offenses could lead to maximum sentences of not more than one year in jail, 90 days imprisonment, and not more than 90 days imprisonment. Mr. Dilday has the same bond of $20,000 and is charged with second degree riot and disorderly conduct.

It should be noted that all of the aforementioned offenses are misdemeanors with the exception of the offense of inciting a riot which may be treated as either a misdemeanor or a felony. At this point no final determination has been made as to whether or not the charges of inciting a riot will be treated as felonies or misdemeanors by the offices of the Columbus City Attorney and the Prosecuting Attorney for Franklin County.

It is agreed that petitioners have exhausted their remedies with respect to bail reduction at the level of the Franklin County Municipal Court. Petitioners have applied to this court pursuant to R. C. 2725.02, citing Section 9, Article 1 of the Ohio Constitution which provides in part that "all persons shall be bailable except for capital offenses * * * excessive bail shall not be required. * * *" Petitioners also cite in support of their petition the provisions of the Eighth Amendment of the United States Constitution which contains similar provisions prohibiting excessive bail.

In construing the provisions as outlined above, our courts have consistently supported the general principle that the amount of bail must be a reasonable amount keeping in mind that the purpose for the requirement of bail is to secure the appearance of the accused at trial. The case law in this area sets out a number of factors for consideration in determining the "reasonableness" of bail in any particular case. These are:

1. The seriousness of the offense and the penalty for conviction for same;

2. the evidence of character and reputation of the accused along with any criminal record if present; and

3. most importantly, any evidence bearing on the probability or lack of probability of the accused appearing for trial.

It should be noted that before granting relief on petitions of this nature there must be a clear cut demonstration that the bail set by the trial court was not reasonable and that the criteria outlined above was not applied to the particular fact situation before the trial court. This is not a hearing held *de novo*. It must clearly appear from the record of the proceeding in the trial court that an abuse of discretion was present in the application of the aforementioned criteria.

Before undertaking an examination of the record, it should be noted that our courts have consistently recognized that punishment should follow conviction and that preventive detention is in no case proper absent an emergency situation involving a clear and present danger to the community. It is incumbent upon this court regardless of its own predilections with respect to the alleged conduct involved to support the constitutional rights of these petitioners, if for no other reason than to encourage respect for and confidence in the judicial system of the citizenry.

Counsel for the petitioners cite the case of *State* v. *Bevacqua*, 147 Ohio St. 20, in support of the general proposition that keeping an accused in jail by excessive bail is as much a denial of his constitutional rights as outright refusal to fix same. *Bevacqua, supra,* stands for the further point that the accused may upon refusal by the trial court to reduce or fix bond, sue out a writ of habeas corpus in a court of competent jurisdiction where bail may be given pending hearing and a final adjudication made as to whether the bail required in the court in which the charge pends, is excessive. See also *Locke* v. *Jenkins*, 20 Ohio St. 2d 45.

The court's attention has been directed to the case of *In re Lonardo*, 86 Ohio App. 284 and *In re Polizzi*, 61 Ohio App. 354. These cases involve the same procedure used in the present case. Aside from these cases, there is a dearth of case law in our state on the subject at bar. Both *Polizzi* and *Lonardo* cite with approval *State* v. *Snow*, 340

Ill. 464, 173 N. E. 8. The petitioner in this case was charged with vagrancy. Excerpts from this case follow:

"The maximum penalty upon conviction of that charge was imprisonment at hard labor for six months or a fine of $100. It appeared that the petitioner in that case had a long criminal record. In 1900 he was sentenced to the Pontiac Reformatory for rape and subsequently paroled, in 1904 he was sentenced to the Joliet Penitentiary for robbery, on May 28, 1904, he was taken from the penitentiary, was tried and convicted of murder and sentenced to be hanged on June 17, 1904, but was reprieved on June 16, and his sentence commuted to life imprisonment. On June 10, 1917, he escaped, but on October 4, 1917, he was returned from his escape. On July 28, 1923, he was paroled and was discharged on January 28, 1926. On August 12, 1927, he was sentenced to the federal penitentiary at Leavenworth and fined $1,500 for conspiracy against the laws of the United States. At the time of the vagrancy charge there was also pending against him three indictments for assault with intent to murder, driving while intoxicated and carrying weapons."

In reducing the bail on the charge of vagrancy from $50,000 to $5,000, Chief Justice Dunn, speaking for the Supreme Court of Illinois said:

"The constitutional right to be admitted to reasonable bail cannot be disregarded. The judge has no more right to disregard and violate the Constitution than the criminal has to violate the law. It is the duty of courts to support and maintain the Constitution, and if the judges, who have taken an oath to support the Constitution, openly violate it, how can they expect the courts to retain the confidence and respect of the people? A criminal may have forfeited his right to liberty, but neither courts nor any other power have the right to deprive him of it except in accordance with the law of the land. Under the circumstances of this case, in which the extreme penalty is imprisonment at hard labor for six months or a fine of $100, the action of the court in requiring $50,000 bail was unreasonable and violated the constitutional right of the petitioner to be bailed by sufficient sureties."

The foregoing appears to have a certain amount of application insomuch as the record of this case contains a variety of extraneous facts which do not bear on the criteria applicable to setting reasonable bail. Ordinarily bail is fixed in relatively small amounts in *misdemeanor* cases. Departure from this practice may be justified where the accused has a record of repeated convictions of serious crimes and/or a showing that there is a likelihood that the accused will fail to appear at trial.

The court must conclude that the record does not contain objective and probative evidence that there is any real likelihood that any of the petitioners will flee this jurisdiction. The record does not contain, with one exception, any objective evidence of bad reputation in the community other than a marked propensity to flount the authority of police. However, this is precisely the infraction with which they have been charged and presumably, if found guilty, for which they will answer. The record does reflect the distinct possibility that a prison term awaits some, if not all, of the petitioners. But one must consider the normal bond placed in cases involving rape, armed robbery and burglary (*i. e.*, between $5000 and $20,000 depending upon the defendants' past record). As stated in *Lonardo, supra,* at pages 292 and 293, ''if by adhering to the constitutional mandate, as we must, an advantage accrues to those who deserve the least, such a result is to be deplored. But greater potentialities for enduring harm lie in the evasion of judicial duty which would impair one of the fundamental guaranties of liberty contained in the Bill of Rights.'' With this in mind, there follows a review of the facts found in the records as the three petitioners whose record is presently before this court.

Review of the record with respect to petitioner Steven Abbott reflects the following, said information being unrebutted by either the record or the city attorney's office. Mr. Abbott is 22 years old, a graduate of O. S. U., and life-long resident of this area. While at Ohio State University as a writer for the Ohio State Lantern he served on Mayor Maynard Sensenbrenner's Task Force during the fall of 1971. Mr. Abbott is presently working part time

at the Ohio State University Library with previous employment at the defense construction supply depot. Mr. Abbott is presently residing at Apartment 24, 2116 N. High Street. Following charges against him in this particular case he surrendered himself to the authorities.

Mr. Abbott also employs himself as a writer for the Columbus Free Press. The only evidence of bad character or reputation is that offered by the state in the form of one "inflammatory article" purportedly written by Abbott in his capacity as a writer for the aforementioned newspaper.

The record reflects that the trial court apparently was under the impression that Mr. Abbott had been charged with a felony (see page 3 of the record). The prosecutor was apparently under the same impression (see page 4 of the record). Thus it would appear that the trial court in setting petitioner's bond at $20,000 was operating on a misapprehension with respect to the gravity of the offense involved. There is nothing in this record that would justify a bond in the amount of $20,000 and it must be reduced to a reasonable level. There being no evidence of criminality on behalf of this petitioner or anything in the record reflecting a propensity not to appear for trial, this court deems the sum of $3000 to be entirely adequate bail, $2000 of the aforementioned bail may be obtained by way of QW and $1000 by way of surety. The petitioner is discharged from custody upon his furnishing the aforementioned bail in the sum of $3000.

With respect to petitioner Colin Neiburger, the record reflects that the petitioner has resided in Columbus, Ohio since August of 1971, and presently lives at 124 E. 7th Street. Mr. Neiburger formerly attended Parsons College in Iowa and was enrolled for one year at Kent State University. His family resides in Baltimore, Maryland. He is presently employed in the public relations department of Hide-A-Way Hills Realty Inc., having been in this company's employ since November 1971. Mr. Neiburger pleaded guilty to the charge second degree riot in Ravenna, Ohio and was sentenced to one year, 10½ months of sentence having been suspended by the trial court. In addition

to this conviction he forfeited a $10 bond on a disorderly conduct charge in Washington, D. C. The record reflects membership and leadership in various off campus organizations, some of which are controversial but none of which are known as illegal in their aims or subversive in their purposes. The trial court correctly states that there is no indication that the petitioner has any roots in the community; however, on the other hand, the record contains no objective evidence of a propensity on behalf of the petitioner to depart this jurisdiction. The petitioner surrendered to the Columbus police authorities on receiving information that a warrant had been issued for his arrest. The trial court was advised that the defendant's previous conviction was for a felony (see the record at page 14). It is obvious from the penalty reflected in the record that the incident in Ravenna, Ohio was treated as a misdemeanor.

The record does reflect the petitioner's propensity for violent activity, for in addition to said misdemeanor we have a second charge of assault and battery on a police officer in 1969; however, in light of the foregoing, a $100,000 surety bond appears to be unconscionable and bears no relationship to the seriousness of the offense charged. Keeping in mind the absence of affirmative testimony reflecting assurance of the petitioner's appearance for trial and petitioner's brief stay in this jurisdiction, the sum of $10,000 is deemed to be reasonable and adequate bail. Bail of $5000 will be required by way of surety and the balance may be handled by way of a QW bond. Petitioner is discharged from custody upon furnishing bail in the sum of $10,000.

A review of the record with respect to petitioner Jerome Friedman reveals the following salient factors:

Mr. Friedman resides at 226 East 16th Ave. His principal occupation during the past five years has been a student at O. S. U. where he has just finished his term as president of the undergraduate student body. Petitioner is presently gainfully employed as Executive Director of the Community Union. Mr. Friedman is a member of the Sphinx Honor Society and other off-campus activities none of which appear to be subversive or violence-oriented. His

domicile prior to entering O. S. U. was Shaker Heights, Ohio. Mr. Friedman was appointed to and served on the Presidential Search Committee, which committee's aim was the finding of a replacement for Dr. Novice Fawcett, and is allegedly on leave from an appointment as an O. S. U. research assistant.

Mr. Friedman has no known felony or misdemeanor arrests or convictions. The only objective evidence of bad character or reputation of the petitioner is found in the cross-examination by the court. In the course of cross-examination the court volunteered the information that Mr. Friedman used obscenities in describing the court on noting his presence at a recent political meeting. The petitioner surrendered himself on hearing of a warrant having been issued for his arrest.

The only stated grounds for $100,000 bond in this case was the court's possible concern with the defendant's appearance for trial and defendant's highly disrespectful attitude displayed during an out of court incident. The court asked for a recommendation as to bond from Lt. Thomas Walters, whose only express concern was petitioner's lack of local ties, which concern is puzzling in light of the record as outlined above. Lt. Walters suggested a bond of $50,000.

Bond set in this case is unreasonable *per se* based on the record. A reasonable bond in this case should never have exceeded $10,000. A $9,000 bond may be posted by way of "QW" and the balance by way of surety. On posting of $10,000 bond as aforesaid, the petitioner will be released from custody.

There being no records presently available for the other three petitioners, by agreement of the parties, temporary bond is set at $10,000 for Mr. and Mrs. Miernik and $3000 for petitioner Dilday pending a final adjudication of this matter.

SUPPLEMENTARY DECISION AND JUDGMENT ENTRY

(No. 72CV-05-1540—Decided May 23, 1972.)

WRIGHT, J. A hearing supplementing the previous proceedings in this matter was held on this date. By agree-

ment and on the recommendation of the prosecutor the bond in the case of John Miernik is reduced from $100,500 to $11,000, $1000 of which shall be by way of surety, $1,000 by way of a cash deposit with the clerk of the Criminal Court, and $9000 by way of a recognizance bond. By agreement, and on the recommendation of the prosecutor, the bond in the case of Margaret Miernik shall remain at that previously set, that being $10,000, $1000 by way of cash deposited with the clerk of Criminal Court, $9000 by way of recognizance. By way of agreement and at the recommendation of the prosecutor the bond in the case of Chester Dilday shall be increased from $3000 to $3500, $2000 being by way of recognizance and $1,500 by way of surety. By agreement, execution date with respect to the above increases shall be 2 days from date. It should be noted that the court carefully reviewed the records adduced by the trial court during the bond hearings on all of the aforementioned three individuals and by agreement of all parties considered supplementary testimony clarifying the numerous arrest records produced for the trial court and found that with the exception of two cases, all of said arrests were concluded with either a dismissal of the charges or a *nolle pros* entered on said charges by the prosecutor's office. As in the cases of petitioners Abbott, Friedman and Neiburger, the court is of the opinion that the bonds set in these last three cases were unreasonable and excessive in the cases of Margaret Miernik and Chester Dilday. In the case of John Miernik there appeared to be some justification for a substantial surety bond. In light of the prosecutor's recommendation, however, the court feels justified in acceding to the agreement for the lower figure noted above.