**Randy Dale MAYO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 66489.**

Court of Criminal Appeals of Texas,
Panel No. 2.

Feb. 11, 1981.

Bill Pemberton and Joe Weis, Greenville, for appellant.

F. Duncan Thomas, Dist. Atty., and Steven Watkins, Asst. Dist. Atty., Greenville, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

### OPINION

CLINTON, Judge.

This is an appeal from an order rendered under authority of Article 44.04(d), V.A.C.C.P. increasing the amount of bail required of our indigent appellant, who ironically has been continuously confined since the date of the alleged offense in lieu of giving bail in the amount originally fixed. Though the proceeding was initiated by motion of the affected district attorney he did not adduce any evidence; the court ruled on the basis of a colloquy with the attorneys and personal knowledge of the judge who also presided at trial leading to the conviction. From

what the skimpy record reveals, the facts seem to be as follows.

As a consequence of a prior conviction for the offense of forgery, said by a purported information to have been committed in Hopkins County on or about August 12, 1977,[1] appellant was confined by the Texas Department of Corrections for a term of years not shown in our record. Undisputed, however, is that the conduct for which appellant has now been tried and convicted occurred on the very day he was released from confinement, August 31, 1979. The offense is kidnapping one named female,[2] and all we are informed about its circumstances is a statement by the prosecutor that there was testimony at trial "that it involved two girls, that a knife was used, and that knife was in evidence..." Apparently appellate was arrested and confined the same day for the sentence imposed by the trial court is ordered to begin on and run from that date, August 31, 1979, and the Sheriff of Hunt County certifies that appellant was transferred to his jail in September 1979 and has been in his custody ever since, never having made bond during that period of time.

Punishment assessed by the jury, on or about August 14, 1980, is confinement for ten years, the maximum authorized for a felony of the third degree, V.T.C.A. Penal Code, § 12.34(a). It rejected the repeater allegation and specifically wrote "none" as amount of a fine. Sentence was imposed September 26, 1980,[3] and appellant gave notice of appeal, executed an affidavit stating that he is "too poor and unable to employ" an attorney for appeal; the trial court expressly found those to be the facts and appointed the same lawyer who had represented appellant at trial.[4]

November 11, 1980, the State moved to raise the amount of bail, asserting for grounds that bail currently fixed "is wholly insufficient to protect the interests of society and insure that the ends of justice will be met." Since return of the indictment November 29, 1979 bail had been set at $25,000 property bond or $5,000 cash deposit, and appellant had lain in jail. In its motion the State sought bail in the amount of $100,000.

After the hearing already summarized *ante,* over the protests of appellant's attorney that his client is "unable to make a bond in anyway," and "if anything ... this bond should be lowered," suggesting "some vindictiveness on the part of the State," the court entered a November 13, 1980 order increasing bail to $10,000 cash or $60,000 property.[5] While there is no evidence

1. This conviction, alleged in an enhancement paragraph to make appellant a repeat offender pursuant to V.T.C.A. Penal Code, § 12.42(a), is characterized as void by appellant in that the information does not begin with "In the name and by authority of the State of Texas," as required constitutionally by Article V, § 12 and statutorily by Article 21.21, V.A.C.C.P. See *Ex parte Cooper,* 589 S.W.2d 130 (Tex.Cr.App. 1979). Because there is some indication that this matter is made an issue on direct appeal from the conviction, we do not decide the point, but note the characterization as it was called to the attention of the trial court. Furthermore, the judgment recites a jury finding of "Not True" with respect to the enhancement allegations.

2. In pertinent part the indictment charges that on the stated date appellant did "with intent to prevent the liberation of ... [Dee] ... and without her consent, restrain ... [Dee] ... by threatening to use deadly force on ... [her]." (We use only an abbreviated version of the full name of the alleged victim.)

3. There is a contemporaneously made docket entry, so dimly reproduced that it cannot be read in its entirety, that seems to be a finding, made under Article 42.12, § 3f(a)(2), V.A.C. C.P., for purposes of § 15(b), *id.,* that a deadly weapon was used or exhibited during the alleged kidnapping.

4. At the outset appellant indicated he would employ counsel but apparently he did not, for a month later the court appointed one for him; when that lawyer was permitted to withdraw, present counsel was appointed to represent appellant upon a similar affidavit and finding of poverty. While we know nothing more about it, in July 1980 the trial court also entered an order for a psychiatric examination of appellant, presumably by a court appointed specialist.

5. In pronouncing the ruling, after stating the new amounts, the judge pointed out that a submitted bond must be approved by the court and the Sheriff, "and there would be conditions attached to it which this Court has a right to

whatsoever of "vindictiveness" toward appellant, we agree substantially with his first protest.

Rules for fixing the amount of bail are provided by Article 17.15,[6] V.A.C.C.P. But, after an accused has been found guilty and begins post-verdict proceedings, they are modified somewhat and supplemented by additional relevant considerations reflected by provisions of Article 44.04, supra, "one of the most important" of which is the punishment assessed, *Ex parte August*, 552 S.W.2d 169 (Tex.Cr.App.1977), and the State stresses that the jury assessed the maximum allowed. But though the Legislature felt well enough advised to dictate that bail be denied entirely to one whose sentence exceeds fifteen years, yet it still permitted an appellant who receives a term of ten years or less to remain in his own bailiwick if he desires that, Article 42.09, § 5, V.A.C.C.P., and to be released on reasonable bail "unless there then exists good cause to believe that [he] would not appear when his conviction became final or is likely to commit another offense while on bail," Article 44.04(c). See *Putman v. State*, 582 S.W.2d 146, 150–151 (Tex.Cr.App.1979). We attach more significance—in this case, certainly—to the term of years than to the fact that it is the permissible maximum punishment, since the attributes of the latter are rendered somewhat uncertain by the "Not True" finding as to enhancement by the jury. Speculation over the collective attitude of jurors is no substitute for policy considerations clearly manifested by legislative direction and judicial reaction and construction in matters of personal liberty and freedom from restraint except upon good cause relating to the valid societal interest in securing the presence of the accused. *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96

L.Ed.2d 3 (1951); see *Ex parte Deaton*, 582 S.W.2d 151, 153 (Tex.Cr.App.1979).

Another factor, also not controlling, is the ability or inability of an accused to make the bail that is to be set. *Ex parte Pemberton*, 577 S.W.2d 266 (Tex.Cr.App. 1979); *Ex parte August*, supra. Here the State argues appellant failed to present evidence on that point, but we know that before August 31, 1979 appellant had been imprisoned for a number of years, and while he has remained confined in the Hunt County Jail for more than a year the trial court has, early and late, twice found the facts of his indigent condition. Obviously appellant has been without gainful employment, and without income, during his incarceration, *Ex parte Salizar*, 537 S.W.2d 252 (Tex.Cr.App.1976).

It must be remembered that the moving party in this matter is the State, and from what has been gleaned from the record we must conclude that it has not shown that bail in the amount of $25,000 property bond or $5,000 cash deposit is insufficient to protect the ambiguous interests it asserts. Accordingly, we must find that the increased terms of bail set by the trial court in November 1980 are excessive. *Ex parte Pemberton*, supra (aggravated robbery); *Ex parte Wright*, 557 S.W.2d 106 (Tex.Cr.App.1977) (felony possession of a firearm by a felon with three prior felony convictions); *Ex parte Salizar*, supra (indecency with a child, ten years maximum punishment, two prior felonies).

On the other hand, in the present posture of the matter we would not be authorized to order that the original terms of bail be reduced, for appellant has not formally moved for that relief nor has he

---

impose." The authority for the latter is found in Article 44.04(c), but we have no idea from the record what "reasonable conditions" the court had in mind.

**6.** Bail should be sufficiently high reasonably to assure appearances, but not be used as an instrument of oppression, and must be based on considerations of ability to make bail and the nature of the offense. The Court has stat-

ed, however, that the last mentioned factor has no application to the matter of setting bail after conviction: *Ex parte Mendoza*, 414 S.W.2d 666, 668 (Tex.Cr.App.1967). We need not determine today the continuing viability of that notion since, as indicated, the record tells too little about the circumstances surrounding the offense for us to interpret them one way or the other.

tendered any evidence to justify his protest that bail "should be lowered" in order to meet the burden of proof that is his in seeking such relief. *Ex parte August*, supra; *Holliman v. State*, 485 S.W.2d 912 (Tex.Cr.App.1972).

Since no conditions on bail have been imposed by the trial court, we do not address that contingency and are content to invite attention to the views reported in *Estrada v. State*, 594 S.W.2d 445 (Tex.Cr. App.1980).

The November 13, 1980 raising bail to $10,000 cash or $60,000 property is vacated and set aside. We reinstate the original terms of bail in the amount of $25,000 property bond or $5,000 cash deposit pending appeal, without prejudice to further proceedings pursuant to Article 44.04, supra.

It is so ordered.