Antonio ESQUIVEL, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–95–00934–CR.

Court of Appeals of Texas,
San Antonio.

March 29, 1996.

Paul J. Goeke, San Antonio, Robert McGlohon, Jr., San Antonio, for appellant.

Daniel Thornberry, Assistant Criminal District Attorney, San Antonio, for appellee.

Before CHAPA, C.J., and RICKHOFF and HARDBERGER, JJ.

## OPINION

HARDBERGER, Justice.

Our opinion issued March 20, 1996, is withdrawn and this opinion is issued in its stead. This is an accelerated appeal of an order denying a reduction in bail. The appellant was indicted on fifteen counts of sexual assault, indecency with a child, and prohibited sexual conduct. His pre-trial bond was set at $150,000 by the grand jury. Appellant filed an application for writ of habeas corpus seeking a reduction in bail. Following an evidentiary hearing, the trial court denied relief, and this appeal followed. For the reasons stated below, we affirm.

### Facts

Appellant is a former police officer who stands accused of sexually molesting his sixteen-year-old daughter in nine separate acts over a two-year period. The conduct alleged, which is classified as second- and third-degree felonies, includes exposing himself to his daughter, touching her on the breasts and female sexual organ, performing cunnilingus, and penetrating her sexual organ with his fingers and penis.

### Excessive Bail

Appellant asserts that the $150,000 bail is excessive under the Texas Constitution and the Texas Code of Criminal Procedure and, in a second point of error, it is also excessive under the Eighth and Fourteenth Amendments to the United States Constitution.

Article 1.09 of the code of criminal procedure proscribes excessive bail. TEX. CODE CRIM.PROC.ANN. art. 1.09. The primary purpose of an appearance bond is to secure the presence of the defendant in court for the trial of the offense charged. *Ex parte Rodriguez,* 595 S.W.2d 549, 550 (Tex.Crim.App. 1980). Bail should be set sufficiently high to give reasonable assurance that the defendant will appear at trial, but it should not be used as an instrument of oppression. *Ex parte Ivey,* 594 S.W.2d 98, 99 (Tex.Crim.App.1980); *Ex parte Vasquez,* 558 S.W.2d 477, 479 (Tex. Crim.App.1977).

Article 17.15 of the code of criminal procedure lists the factors to be considered in determining the appropriate amount of bail. TEX.CODE CRIM.PROC.ANN., art. 17.15 (Vernon Supp.1996); *see also Ex parte Rodriguez,* 595 S.W.2d at 550; *Ex parte Ivey,* 594 S.W.2d at 99; *Ex parte Vasquez,* 558 S.W.2d at 480. Because there is no recognized standard of review for bail reduction cases we have reviewed the evidence before the trial court in light of these factors.

*First, the bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.* The appellant is recently divorced and no longer has a permanent residence or a regular job in San Antonio. A fellow officer named Thomas Shaw who had worked with the appellant for ten years stated it was his opinion that the appellant would appear for trial. While the investigation was pending, appellant made a trip to visit a friend in Florida, but he returned to San Antonio immediately after the indictment was returned. When the appellant learned of the arrest warrant, he called and asked Shaw to accompany him to the jail to surrender. Under cross-examination, appellant testified that in the weeks prior to his arrest, he traveled to Chicago for work, to Laredo to visit his mother, to Flori-

da to work, and to Indianapolis to visit a brother. This evidence can be looked at in two ways. The State casts it in the negative light that it means Esquivel will flee to another state if put on bond. However, in Esquivel's favor is that he was trying to stay employed (having resigned from the police department), and, importantly, that he did travel back from Florida to Texas to turn himself in on these charges. Voluntary surrender is a factor that courts have used to lower a bond. *See Ex parte Hellenguard,* 622 S.W.2d 875, 875–76 (Tex.Crim.App.1981) (bail reduced in murder case from $100,000 to $25,000 where defendant voluntarily surrendered to sheriff); *Ex parte Walton,* 583 S.W.2d 786, 786–87 (Tex.Crim.App.1979) (bail reduced in murder case from $25,000 to $15,000 where defendant surrendered voluntarily to police); *Ex parte McDonald,* 852 S.W.2d 730, 736 (Tex.App.—San Antonio 1993, no pet.) (bail reduced in murder case from $1,000,000 to $75,000 where defendant turned himself in to police before they knew offense had been committed).

*Second, the power to require bail is not to be so used as to make it an instrument of oppression.* The appellant testified that he owns no real estate or other property which could be pledged as collateral. He had contacted several bondsmen who advised him they needed collateral in addition to 10% of the bond amount in cash.

*Third, the nature of the offense and the circumstances under which it was committed are to be considered.* The evidence of this third factor was introduced in the form of the victim's statement to the police. This statement accuses the appellant of abusing his daughter for many months, with the level of abuse intensifying with each event. This case involves second- and third-degree felonies which may result in a sentence of two to twenty or two to ten years imprisonment, respectively. *See* TEX.PENAL CODE ANN. §§ 12.33, 12.34, 21.11(c), 22.011(f), and 25.02(c) (Vernon Supp.1996).

The offenses charged in this case—incest, sexual assault of a child, and indecency with a child by exposure and contact—are extremely repugnant. Considering that the accused is the natural father of the victim, a greater sense of helplessness and over-reaching by a person in authority cannot be imagined. A child has a right to look to her parents for support and guidance when there are no others. Such behavior, if true, not only is an affront to a civilized society, but to any primitive tribe of people as well.

*Fourth, the ability to make bail is to be regarded, and proof may be taken upon this point.* On the subject of what the appellant is able to raise for bail, he testified he anticipated receiving $6,000 and he and his family would be able to raise an additional $3,100. There was no testimony as to when or if the $6,000 would be forthcoming. Since his resignation from the police force in June of 1995, the appellant has held only temporary jobs in several communities, earning ten dollars an hour or less.

It would appear that the appellant, from the testimony presented, will have a difficult time in making any appropriate bond. But the ability to make bail is only a factor that needs to be considered. It is not dispositive. *Ex parte Jones,* 803 S.W.2d 712, 716 (Tex.Crim.App.1991); *Ex parte Rodriguez,* 595 S.W.2d at 550; *Ex parte Perez v. State,* 897 S.W.2d 893, 895 (Tex.App.—San Antonio 1995, no pet.). This is true even if the appellant is indigent. *Ex parte Charlesworth,* 600 S.W.2d 316, 317 (Tex.Crim.App. 1980) ("Although the ability to make bail is a factor to be considered, ability alone, even indigency, does not control the amount of bail"). Indeed, "[i]f the ability to make a specified bond were determinative, then the trial court would be relegated to the position of setting bail as determined by the accused." *Ex parte Welch,* 729 S.W.2d 306, 310 (Tex. App.—Dallas 1987, no pet.); *see also Ex parte Miller,* 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet ref'd). The burden is on the party seeking a reduction to show that the bail set is excessive. *Ex parte Rubac,* 611 S.W.2d 848, 849 (Tex.Crim.App. 1981) (bail pending appeal); *Ex parte Perez,* 897 S.W.2d at 895. This requires the appellant to show he is unable to furnish bail in the amount set. *Ex parte Stembridge,* 472 S.W.2d 155, 155 (Tex.Crim.App.1971); *Ex parte Williams,* 467 S.W.2d 433, 434 (Tex. Crim.App.1971) (explaining that complaint of

excessive bail will not stand in the absence of evidence that appellant tried to furnish bail). On February 9, 1996, we published our opinion in *Thomas Eggleston v. State,* 917 S.W.2d 100 (Tex.App.—San Antonio 1996), wherein we set a bond at $300,000 though the evidence on this factor demonstrated Eggleston and his family could raise no more than $600. (Noteworthy is the fact that Eggleston was prepared to satisfy that bond after the opinion issued).

*Fifth, the future safety of a victim of the alleged offense and the community shall be considered.* The appellant has no past record involving a felony or misdemeanor of moral turpitude. The State, however, presented evidence of three incidents that are relevant to this issue.

The first of these was a statement by the child that her father, following his having sexual intercourse with her, told her: "not to tell anybody or he would kill me. We were talking about music and he came out and said don't tell anybody or I'll kill you.... I am afraid of my dad and believe that he would hurt me if he knew I was talking about this."

The second of these was evidence of the extreme fear of the child towards her father. A police detective described her reaction when she merely saw her father, fifty feet away and at the end of the hallway. She became so upset that she was incapable of walking.

Finally, the third incident occurred when the father, after his resignation from the police force, appeared at the CLEAT[1] office, armed with a pistol in his belt. Angry and upset because he could not get a check that he thought he was owed, he accused the secretary of lying just like his wife, stated he had once lived within the law and now will live outside the law, stated he hated all lawyers, and mentioned, in a general way, "homicide." The secretary was terrified, pleaded with him to calm down, and implored that she had a child.

From the defendant's viewpoint, it is noted that he never drew his weapon, nor did he threaten the secretary. He also related to Officer Shaw that he was sorry for his behavior, and admitted he was wrong to allow his frustrations to get the best of him.

It may well be that Esquivel had no intention of harming anyone, and that, as he said, his frustrations got the best of him. But it is also true that the frustrations, and the stress, will not get any better before the trial. It is likely they will increase.

We also recognize that Esquivel may not have actually meant that he would kill his daughter if she told on him, and it has not yet been found as a fact that he made such a statement. But his daughter has testified that he did, and we cannot fault a trial judge for being concerned about the child's safety and welfare until these matters are sorted out at trial.

The trial court indicated that the "original bond amount was set coming out of the grand jury on that little schedule that we have." From this statement we surmise that the court set bond by using $10,000 per count, and multiplying by the number of counts to reach the bail amount of $150,000. While the utilization of such a schedule may assist the court at the time bail is initially set, it should not be used by the trial court at a bail reduction hearing. The trial court should use the factors set out above in this opinion. The trial court did not explain, and did not need to explain, what factors she was using in denying the bond reduction. But, in any case, our review is on the court's conclusion, and not the mental process reaching that conclusion. Setting bail is a fact-driven determination. The trial court, as the trier of fact, has the job of judging the credibility of the witnesses and the weight to be given their testimony. There is no precise standard for reviewing this determination, and each case, within the guidelines above, must be judged on its own unique facts.

We find that there was sufficient evidence in the record to justify the trial court's denial of the bond reduction, and that neither constitutional nor statutory violations occurred when the trial court made such a determination. We overrule Esquivel's points of error

---

1. Combined Law Enforcement Association of Texas.

one and two. The trial court's ruling on the habeas corpus proceeding is affirmed.