No. 04-03-00154-CR



EX PARTE Richard Marvin MCFARLAND



From the 226th Judicial District Court, Bexar County, Texas


Trial Court No. 002759


Honorable Sid L. Harle, Judge Presiding



Opinion by: Paul W. Green, Justice


Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Phylis J. Speedlin, Justice


Delivered and filed: July 16, 2003


REVERSED AND RENDERED


 Richard McFarland is charged with the murder of his wife. The trial court set pre-trial
bail on the murder charge in the amount of $500,000. McFarland claims the bail is excessive
and seeks a reduction to $250,000. We agree. We reverse the trial court's order and reduce
McFarland's bail on the murder charge to $250,000. 

BACKGROUND

 In a high profile case, McFarland is charged with murdering his wife. The State says
McFarland took the body to a remote location and set it on fire. McFarland allegedly
transported the body in a vehicle he pretended to test-drive for possible purchase. In addition
to the murder charge, McFarland is charged with unauthorized use of a vehicle, tampering
with a witness, and tampering with physical evidence. He was not cooperative with police
during the several months of investigation that lead to his arrest; however, he did not leave
town. McFarland has not confessed to the crime.

 At the bail hearing, McFarland's father testified that his son has only about $700 in
cash. McFarland's home is in receivership and he cannot obtain the equity in that residence. (1)
Additionally, it appears the value of the home will not exceed the family's debt. (2)
McFarland's father testified that only McFarland's parents can contribute to the fee for a
bond, and the most they can raise is $30,000, enough to pay the fee for a $300,000 bond.
In addition, they will be required to offer their home as collateral.

 McFarland has two young sons who are currently in the custody of the State. His
father and a long-time friend testified that McFarland is devoted to his children. Before his
wife's death, he was a stay-at-home parent, working out of the house and taking care of the
boys. McFarland earned about $21,000 per year in the two years prior to the murder. If
released on bail, McFarland would be able to have visitation with his sons and continue his
previous work from home. 


STANDARD OF REVIEW

 We review the trial court's decision on bail for abuse of discretion. See Ex parte
Dueitt, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975); Ex parte Wood, 952 S.W.2d 41, 42
(Tex. App.-San Antonio 1997, no pet.). The defendant challenging the amount of bail has
the burden to show the amount is excessive in light of the five factors listed in article 17.15
of the Texas Code of Criminal Procedure. See Ex parte Rubac, 611 S.W.2d 848, 849 (Tex.
Crim. App. 1981); Wood, 952 S.W.2d at 42; Tex. Code Crim. Pro. Ann. art. 17.15 (Vernon
Supp. 2003). 

DISCUSSION

 First, bail must be sufficiently high to reasonably assure the completion of the
undertaking, that is, the defendant's appearance at trial. Tex. Code Crim. Pro. Ann. art.
17.15(1). McFarland and his family moved to San Antonio approximately five years ago for
Mrs. McFarland's employment. McFarland owns a home in San Antonio and has been
active in church. More significantly, at the bail reduction hearing, McFarland's father and
a long-time friend testified that McFarland is devoted to his children, who are in the State's
custody in San Antonio. McFarland's flight would end any opportunity for him to see his
boys or to regain custody.

 Second, bail should not be used as an instrument of oppression. Tex. Code Crim.
Pro. Ann. art. 17.15(2). The amount of bail must necessarily maintain that delicate balance
between the presumption of innocence and the need to ensure the presence of the defendant
at trial and the protection of the community. See Ex parte Beard, 92 S.W.3d 566, 573 (Tex.
App.-Austin 2002, pet. ref'd). It is difficult to make any overall characterization of the
amount of bail approved in other cases because the facts of each case are so varied, both with
respect to the risk factors and the defendants' financial ability.

 The largest pretrial bail allowed by this court, $750,000, was assessed in a capital
murder case where the crime was particularly violent, the defendant had a history of
violence, and little or no evidence was presented on the defendant's ability to make bail. See
Ex parte Chavfull, 945 S.W.2d 183, 187 (Tex. App.-San Antonio 1997, no pet.). The Tyler
Court of Appeals upheld bail of $600,000 in a capital murder case of "brutal gang-land
murder," where the defendant wrote letters from jail threatening further violence if released
and indicating he was likely to flee the jurisdiction of the court. See Ex parte Simpson, 77
S.W.3d 894, 897 (Tex. App.-Tyler 2002, no pet.). In Eggleston v. State, this court reduced
the amount of pretrial bail from $1,000,000 to $300,000 in a murder case where defendant
allegedly killed his nine-year-old son, hid the body, and reported the child kidnapped.
Eggleston, 917 S.W.2d 100, 101 (Tex. App.-San Antonio 1996, no pet.). Eggleston had
lived all over the world, had only lived in San Antonio for a year, and had contacts in many
other states. Id. 

 In contrast, there are a number of cases of pretrial bail in murder cases set at or below
$100,000. See, e.g., Ludwig v. State, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991) (bail in
capital murder case reduced from $2,000,000 to $50,000); Ex parte Milburn, 8 S.W.3d 422,
427 (Tex. App.-Amarillo 1999, no pet.) (pretrial bail reduced in capital murder of a child
from $2,000,000 to $100,000); Ex parte McDonald, 852 S.W.2d 730, 734-35 (Tex.
App.-San Antonio 1993, no pet.) (bail reduced from $1,000,000 to $75,000 in case where
defendant allegedly kidnapped and stabbed his wife). In this case, if McFarland receives bail
of $250,000 on the murder charge, his total bail would be $300,000 when combined with the
bail amounts assessed for the other charges. (3)

 Third, we consider the nature of the offense and the circumstances under which it was
committed. Tex. Code Crim. Pro. Ann. art. 17.15(3). In this case, Susan McFarland was
brutally murdered and her body transported to a remote location and burned to conceal the
crime. The State claims McFarland impeded the investigation in a number of ways,
including tampering with witnesses and physical evidence. If convicted of the murder,
McFarland faces a possible life sentence. 

 Fourth, the defendant's ability to make bail is considered. Tex. Code Crim. Pro.
Ann. art. 17.15(4). This factor is relevant but not dispositive of the issue. Esquivel v. State,
922 S.W.2d 601, 604 (Tex. App.-San Antonio 1996, no pet.). The record shows McFarland
earned only about $21,000 per year, and his wife was the primary wage earner. McFarland
has only about $700 in cash available. McFarland and his wife own a house in San Antonio,
but it is in receivership. Although McFarland could live there while his trial is pending, he
is not able to use the equity to make bail. McFarland's father testified the family could
probably gather $30,000, enough to pay the fee for a total bond of $300,000. 

 Finally, we consider the future safety of the community. Tex. Code Crim. Pro. Ann.
art. 17.15(5). There is no evidence that McFarland is a danger to his remaining family,
including his children and parents. Although McFarland allegedly impeded the police
investigation, he did so by theft and bribery, not by threats or violence. He has no prior
arrests or history of violence. 

 In conclusion, although there is some possibility McFarland could flee, no amount of
bail will completely erase that risk. Although the crime is a serious and shocking one,
McFarland has ties to the community and his children that mitigate against his risk of flight.
Further, other than the fact of the crime itself, there is no evidence McFarland is a danger to
the community if released. Based on the foregoing, we hold the trial court abused its
discretion by setting bail in the amount of $500,000 on the murder charge. We reverse the
trial court's order and order that McFarland's bail be set at $250,000 on the murder charge,
subject to such reasonable terms and conditions as may be determined by the trial court.


 Paul W. Green, Justice

Do Not Publish
1. Mrs. McFarland's community interest, her sole management community property, and her separate property
are all subject to the receivership.
2. McFarland's attorney in the receivership action submitted an affidavit outlining McFarland's assets and
confirming his inability to make bail.
3. The bail amounts on McFarland's charges for unauthorized use of a vehicle, tampering with a witness, and
tampering with physical evidence total $50,000. Therefore, if McFarland's bail on the murder charge is reduced to
the $250,000 he requests, his total bail will be $300,000.