**Opinion issued April 13, 2023**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-22-00692-CR**

_____

**EX PARTE ERIC RAY CANO, Appellant**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1783278**

---

**MEMORANDUM OPINION**

Appellant Eric Ray Cano appeals from the trial court's denial of his application for writ of habeas corpus. Cano contends on appeal that the trial court erred by setting an unreasonable bond.

We affirm.

## Background

The State alleged that Cano committed a murder on October 1, 2020.[1] At the time, Cano had two prior felony convictions. The probable cause affidavit stated that after Cano initially fought the decedent at a birthday party, he went to the decedent's residence, shot the decedent, and then fled the scene in a pick-up truck. Officers later went to Cano's house and found a pick-up truck with "apparent blood and brain matter on the front passenger seat." The officers learned that Cano had then fled in a different pick-up truck. A few days later, Cano was arrested.

The trial court initially set bond at $250,000. It also found that Cano was indigent and appointed counsel to represent him. Cano posted bail on November 18, 2020.

On February 25, 2021, a grand jury indicted Cano for murder. Between June 2021 and July 9, 2022, the trial court set various bond conditions. It allowed Cano to work Monday through Saturday and permitted him to attend a sleep study.

Then, on July 27, 2022, following a second bond hearing, the trial court set bond at $1,000,000. The trial court stated that it considered the factors in article 17.15(a) of the Texas Code of Criminal Procedure and that a higher bond was necessary "to reasonably ensure the defendant's appearance in court as required and

---

[1] *See* TEX. PENAL CODE § 22.01(a).

the safety of the community, law enforcement, and the victim of the alleged offense." The trial court also set bond conditions that include continuous house arrest.

On August 8, 2022, Cano filed an application for writ of habeas corpus. Cano argued that his bond was improper because it was quadrupled, without any bond violations, and that the original bond should be reinstated.

The State responded by pointing out that at the July 2022 bond hearing, the trial court was made aware of facts involving Cano that were unknown when bail was originally set. Specifically, that in addition to being indicted for murder, Cano is "a double-enhanced habitualized felon" with earlier cases for aggravated assault with serious bodily injury and a drug-related offense.

With respect to Cano's indictment for murder, the State recounted that after Cano went to the decedent's residence and shot him in front of his brother and teenage son, Cano fled the scene. Cano then left town in a different pick-up truck. An officer later attempted to stop Cano in Kimble County, but Cano evaded authorities until spikes were used to disable his vehicle. Cano then refused to exit the vehicle as officers surrounded it with their weapons drawn. After Cano finally exited, police found a loaded firearm in the truck. The State also told the trial court that it believed Kimble County had charged Cano with evading arrest and felon in possession of a firearm.

The State further recounted the aggravating circumstances of this alleged crime, including that Cano knew the decedent and his family and that Cano later spoke with the person who hosted the birthday party and admitted "I really fucked up."

Additionally, the State indicated that the potential punishment was 25 years to life, that Cano had escalated his crimes since 1997, and that the trial court had previously heard in July 2022 that Cano was a "dire severe risk" to the Harris County community. Based on all the circumstances, the State asked the trial court to keep the existing bond of $1,000,000 in place "based upon the rules of fixing a bail under [article] 17.15." *See* TEX. CODE CRIM. PROC. art. 17.15.

Cano's sole witness at the habeas hearing was his wife, Gina Gaitan. Gaitan testified that she had been married to Cano for eight years and that she worked as an accountant earning $65,000 a year. Gaitan further testified that she had no savings, no ability to raise money, and no assets to sell. Gaitan stated that she learned from a bondsman that she would need 10% of the bond, which would equal an additional $75,000 from what had already been paid on the original bond. Gaitan additionally testified that neither she nor Cano, nor his family and friends could raise the additional $75,000 for the current bond.

On cross-examination, Gaitan testified that Cano's 2020 bond was paid for by his mother, Gaitan's mother, and her savings. And that she hired a habeas attorney

4

for Cano for $60,000 to $70,000, but that she had only paid between $25,000 and $26,000 so far. Gaitan stated that money also came from family and the rest of her savings.

Gaitan admitted that she knew of Cano's past offenses, including, resisting arrest, DWI, possession of a controlled substance, and felon in possession of a firearm. When asked about the felon in possession of a firearm and evading arrest offenses in Kimble County, Gaitan acknowledged the offenses, knew that the police had to deploy spikes to stop Cano's truck, and stated that Cano was afraid to stop because of the murder accusation. Gaitan further admitted that the decedent was a family friend and that she knew his widow.

In closing, Cano argued that the purpose of the initial bond was being met and that he had not violated any of the conditions of that bond. He referred to the State's action as oppression and requested that the original bond be reinstated.

In response, the State urged the trial court to consider the aggravating circumstances, the potential punishment, the criminal history, and all the facts surrounding the forced stop in Kimble County.

At the conclusion of the habeas hearing, the trial court denied Cano's application and ruled that the bond of $1,000,000 was proper and sufficient. Cano now appeals the trial court's order.

**Standard of Review**

A trial court has discretion to set the amount of bail. TEX. CODE CRIM. PROC. art. 17.15; *see Ex parte Gomez*, 624 S.W.3d 573, 578 (Tex. Crim. App. 2021). We review a trial court's decision to grant or deny habeas corpus relief under an abuse of discretion standard. *Gomez*, 624 S.W.3d at 578; *see Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981) (reviewing bail pending appeal for abuse of discretion).

Under that standard, we may not disturb the trial court's decision when it falls within the zone of reasonable disagreement. *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When, as here, a habeas appeal concerns pretrial bail, we may not simply conclude that the trial court did not "rule arbitrarily or capriciously." *Id*. at 593. Rather, we must "measure the trial court's ruling against the relevant criteria by which the ruling was made." *See id*.

In addition, we view the record in the light most favorable to the trial court's ruling. *See Gomez*, 624 S.W.3d at 576. The trial court is the exclusive judge of witness credibility, and we afford it "considerable discretion in making those challenging determinations."[2] *Ex parte Everage*, No. 03-17-00879-CR, 2018 WL

---

[2]     *See also Esquivel v. State*, 922 S.W.2d 601, 604 (Tex. App.—San Antonio 1996, no pet.) (stating "[t]he trial court, as the trier of fact, has the job of judging the credibility of the witnesses and the weight to be given their testimony" at bond hearing).

1788795, at *9 (Tex. App.—Austin Apr. 13, 2018, no pet.) (mem. op., not designated for publication) (observing that bail cases involve "the difficult task of weighing the specific facts of a case against many, often contravening factors, and often in the face of scant evidence").

**Bail in Texas**

"'Bail' is the security given by the accused [to ensure] that he will appear and answer before the proper court the accusation brought against him and includes a bail bond or a personal bond." TEX. CODE CRIM. PROC. art. 17.01; *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). The amount of bail should be sufficiently high to give reasonable assurance that the accused will appear, but should not be set so high as to be an instrument of oppression. *Montalvo*, 315 S.W.3d at 593.

### A. Challenging the amount of bail.

The right to be free from excessive bail is protected by the United States and Texas Constitutions, as well as the Texas Code of Criminal Procedure. *See* U.S. CONST. amend. VIII; TEX. CONST. art. I, §§ 11, 13; TEX. CODE CRIM. PROC. art. 1.09, 17.15. An accused may challenge the excessiveness of bail by filing an application for a pretrial writ of habeas corpus. *See* TEX. CODE CRIM. PROC. art. 11.24. An applicant for habeas corpus relief must prove his factual allegations by a preponderance of the evidence. *See Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim.

7

App. 1995). The habeas applicant has the burden to prove that the amount of bail set by the court is excessive. *See Rubac*, 611 S.W.2d at 849.

**B.      Factors relevant to setting bail.**

The amount of bail required in any case is within the discretion of the trial court, subject to the following rules:

1.      The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2.      The power to require bail is not to be so used as to make it an instrument of oppression.

3.      The nature of the offense and the circumstances under which it was committed are to be considered.

4.      The ability to make bail is to be regarded, and proof may be taken upon this point.

5.      The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. art. 17.15.

Additionally, courts should also consider the following factors: (1) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) the aggravating circumstances alleged to have been involved in the charged offense. *Rubac*, 611 S.W.2d at 849–50.

***Reasonable assurance that appellant will appear but not oppress.***

Bail must be set sufficiently high to provide reasonable assurance that the defendant will appear at trial, without being so high that it amounts to an instrument of oppression. TEX. CODE CRIM. PROC. art. 17.15; *see Gomez*, 624 S.W.3d at 579. The amount of bail becomes oppressive when it is based upon the assumption that the defendant cannot afford to pay and when it is set for the express purpose of forcing the defendant to remain incarcerated. *See Ex parte Nimnicht*, 467 S.W.3d 64, 70 (Tex. App.—San Antonio 2015, no pet.).

Here, Cano argued below that his bail was set at $1,000,000 because he refused to plead guilty and that it is oppressive because he cannot afford to pay it. But Cano does not point us to any evidence in the record that supports his contention that bail was set at $1,000,000 simply to keep him incarcerated.[3]

Next, in determining whether bail is excessive or will reasonably assure the defendant's presence at trial, the defendant's ties to the community and work history

---

[3] *See Montalvo v. State*, 315 S.W.3d 588, 596 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Our independent review of the habeas corpus record likewise does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent [appellant] from posting bail."); *Ex parte Davis*, 147 S.W.3d 546, 549 (Tex. App.—Waco 2004, no pet.) ("The record contains nothing to indicate that the trial court rendered its decision on this basis [forcing appellant to remain incarcerated pending trial]."); *Ex parte Anderson*, No. 01-20-00572-CR, 2021 WL 499080, at *16–17 (Tex. App.—Houston [1st Dist.] Feb. 11, 2021, no pet.) (mem. op., not designated for publication) (noting that bail becomes oppressive when "it is set for the express purpose of forcing the defendant to remain incarcerated," but that no evidence showed that trial court set bail amounts to keep appellant incarcerated).

are relevant. *Ex parte Tata*, 358 S.W.3d 392, 400 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd). Here, Cano presented no evidence to the trial court about his ties to the community. And aside from a letter by a single employer where Cano worked in 2021, there is no evidence in the record of Cano's overall work history. Accordingly, these factors weigh against the current bail being excessive.

### Nature and circumstances of the offense.

When considering the reasonableness of bail, the nature of the offense and the punishment that may be imposed are significant. *See Rubac*, 611 S.W.2d at 849.

Here, Cano is charged with murder—a first-degree felony offense. *See* TEX. PENAL CODE § 19.02(b), (c). The indictment alleges that Cano "unlawfully, intentionally and knowingly cause[d] the death of" the complainant "by shooting the Complainant with a deadly weapon, namely, a firearm." And that Cano "unlawfully intend[ed] to cause serious bodily injury to" the complainant, and "did cause the death of [the complainant] by intentionally and knowingly committing an act clearly dangerous to human life, namely by shooting the Complainant with a deadly weapon, namely a firearm."

The felony offense of murder is serious and necessarily violent in nature.[4] As a result, the punishment range is confinement for life or for any term not less than

---

[4]    *See Ex parte Walker*, No. 07-22-00048-CR, 2022 WL 2176306, at *3 (Tex. App.— Amarillo June 16, 2022, no pet.) (mem. op., not designated for publication) ("Murder is unquestionably a serious offense."); *Ex parte Harber*, No. 04-10-

five years, but no more than 99 years and a fine not to exceed $10,000. *See id.* § 12.32 ("First Degree Felony Punishment").[5]  Because Cano's criminal history includes multiple prior felony convictions, any conviction for murder may be punishable by imprisonment for a life term, or alternatively imprisonment for 25 to 99 years. *See* TEX. PENAL CODE § 12.42(d).

The serious and violent nature of Cano's first-degree felony murder charge, the potential significant sentence that he faces for that offense, the circumstances of the murder itself, and Cano evading arrest, thus also weigh against the current bail being excessive.[6]

---

00643-CR, 2010 WL 5141509, at *2 (Tex. App.—San Antonio Dec. 15, 2010, no pet.) (mem. op., not designated for publication) ("high bond amount . . . was reasonable" given defendant charged with "serious offense" of murder for "causing death of [individual] by shooting him with a firearm"); *Ex parte Chavfull*, 945 S.W.2d 183, 186–87 (Tex. App.—San Antonio 1997, no pet.) (holding $750,000 bail not excessive for defendant charged with murdering individual with firearm given violent nature of crime); *Ex parte Barrera*, No. 11-21-00131-CR, 2021 WL 5934626, at *3 (Tex. App.—Eastland Dec. 16, 2021, pet. ref'd) (mem. op., not designated for publication) (upholding $1,000,000 bond for murder).

[5] *See also Anderson*, 2021 WL 499080, at *13–14 (considering defendant "could ultimately face confinement for thirty years" in concluding "potential sentences [defendant] face[d] . . . weigh[ed] against a determination that the bail amounts set by the trial court . . . were excessive"); *O'Brien v. State*, No. 01-12-00176-CR, 2012 WL 2922545, at *5 (Tex. App.—Houston [1st Dist.] July 5, 2012, no pet.) (mem. op., not designated for publication) (possibility of substantial sentence supported setting of high bail amount).

[6] *See Ex parte Williams*, Nos. 12-18-00174-CR, 12-18-00175-CR, 2018 WL 5961309, at *2 (Tex. App.—Tyler Nov. 14, 2018, no pet.) (mem. op., not designated for publication) ("The . . . severe punishment ranges to which [defendant] may be subjected weigh[ ] in favor of the trial court's decision [to deny defendant's pretrial habeas application and] not . . . reduce the amount of his bonds.").

***The ability to make bail.***

A defendant's ability to make bail is only one factor to be considered in determining the appropriate amount of bail. *See* TEX. CODE CRIM. PROC. art. 17.15(4); *Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980) ("It is established that the ability or inability of an accused to make bail does not alone control in determining the amount of bail."). A defendant's inability to make bail does not render bail excessive. *See Wright v. State*, 976 S.W.2d 815, 820 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

"To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Vague references to inability to make bond, in the absence of evidence detailing the accused's specific assets and financial resources, do not support bail reduction. *Cooley v. State*, 232 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see Wright*, 976 S.W.2d at 820 ("It is well settled that the ability of an accused to make bail does not itself control the amount of bail, even if the accused is indigent.").

Here, the record contains no evidence of Cano's financial condition or the amount of bail that he could afford. Gaitan testified that she earned $65,000 a year, has no savings, and no ability to raise money to pay the additional $75,000 for the current bond. But Gaitan also admitted that she and Cano's family were able to post

12

the initial bond of $250,000 and raise additional funds to pay $60,000-$70,000 to an attorney to prosecute Cano's habeas application. Furthermore, despite Gaitan testifying that she has no assets of value to pay for the current bond and that she previously had to use equity from her house, no testimony explained why the two pick-up trucks that Cano had been driving could not be used to pay bail or whether she had any equity left in her house.

Based on the conflicting evidence from Gaitan and the lack of evidence regarding Cano's financial condition, the trial court could have reasonably determined that these factors weigh against the current bail being excessive. *See Ex parte Chavfull*, 945 S.W.2d 183, 186–87 (Tex. App.—San Antonio 1997, no pet.) (holding that bail reduction unwarranted when, among other facts, defendant provided no evidence of his own individual resources).[7]

### *The future safety of the victim and the community.*

A defendant's criminal history must also be evaluated in setting bail to determine whether he presents a danger to the community. *Nimnicht*, 467 S.W.3d at 69. Cano's habeas application states that his "release will not pose any threat to any member of the community" and that he had been out on his previous bond between November 2020 and July 2022 without incident. Although we agree that Cano's

---

[7] Even if Cano had established that he could not make bail, which he did not do, that factor would not control over all other considerations. *See Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980).

previous release for nearly two years without incident provides evidence that he was not a danger to the community at that time, the trial court also had to consider Cano's overall criminal history in setting the current bail. *Id*.

As detailed above, the indictment alleges that Cano was previously convicted of aggravated assault with serious bodily injury and possession of a controlled substance, which Cano did not dispute at the habeas hearing. Gaitan also testified that Cano's criminal history included resisting arrest in 2016, DWI in 2018, and felon in possession of a firearm in 2018. And, according to the State, Cano was additionally being charged with evading arrest and another felon in possession of a firearm in Kimble County.

Considering Cano's long and recurring criminal history, the trial court could have reasonably determined that Cano posed a continuing danger to the community. This factor therefore also weighs against the current bail being excessive.

***Other factors***.

Additional factors to consider in reviewing a bond decision include the defendant's work record, family ties, length of residency, past criminal record, conformity with the conditions of any previous bond, other outstanding bonds, and aggravating factors involved in the offense. *See Rubac*, 611 S.W.2d at 849–50.

As previously stated, the trial court originally set Cano's bond at $250,000, which he posted in November 2020, and the record does not show that he violated

any of the conditions of that bond. Thus, this is some evidence that Cano's current bond amount could be excessive.

At the habeas hearing, Gaitan testified that she had been married to Cano for eight years, but neither Gaitan nor Cano presented any evidence about Cano's residence history or family ties to the community. Also, aside from a letter by an employer where Cano worked in 2021, there is no evidence of Cano's overall work history. Moreover, Cano's significant and recurring criminal history, as detailed above, is a substantial consideration.

Taken together, these additional factors likewise do not weigh in favor of Cano's bond being excessive. Rather, they support the conclusion that the trial court did not act arbitrarily or unreasonably by denying Cano's application to reduce his current bond. *See Ex parte Davila*, No. 04-19-00276-CR, 2019 WL 4280067, at *2–3 (Tex. App.—San Antonio Sept. 11, 2019, no pet.) (mem. op., not designated for publication) (noting that evidence of defendant's inability to afford bail and his family ties to community were not enough to establish bail amount set by trial court was excessive).

In sum, Cano had the burden to demonstrate that his current bail amount falls outside the zone of reasonable disagreement. *See Montalvo*, 315 S.W.3d at 592. Considering the record as a whole under Texas law, and in a light most favorable to the trial court's ruling, we conclude that Cano has not satisfied that burden. As a

result, we cannot say that the trial court abused its discretion in setting the current bail amount or in denying Cano's habeas application.

## Conclusion

We therefore affirm the trial court's order denying Cano's application for habeas corpus relief.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.

Do not publish.  TEX. R. APP. P. 47.2(b).

16