**Opinion issued March 5, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-23-00889-CR**

———————————

**EX PARTE LYDELL ELLIOT GRANT, Appellant**

---

**On Appeal from the 487th District Court**
**Harris County, Texas**
**Trial Court Case No. 1841757**

---

**MEMORANDUM OPINION**

Lydell Elliot Grant filed a pretrial application for writ of habeas corpus,

seeking to lower his bail. The trial court partially denied his request for habeas relief.

Grant now appeals the trial court's judgment on writ of habeas corpus. *See* TEX.

CODE CRIM. PROC. art. 11.24; TEX. R. APP. P. 31.

We affirm.

## Background

Grant was charged with murder in relation to a shooting on April 6, 2023.[1] The trial court initially set bond at $1,000,000. On October 24, 2023, Grant filed a pretrial application for writ of habeas corpus to reduce his bond contending that he could not afford it.

The trial court conducted a habeas hearing where Grant's sole witness was his brother, Alonzo Poe. Poe, the owner of a trash hauling company and who also works for Uber, testified that he and Grant were raised in the Hiram Clarke area of Houston and had family ties to the community. Poe testified that his parents could not afford a bond because his mother had medical issues and his father was 73. Poe also explained that his two sisters could not help and that he was the only one attempting to post a bond for Grant.

Poe testified that he could afford a bond between $100,000 and $150,000 and that if Grant were released on bond, Poe would bring Grant to court proceedings. Poe also testified that Grant could live with their mother and help in Poe's business. Although he knew of female companion that supports Grant, Poe did not know her financial situation. Poe additionally testified that Grant is a U.S. citizen and not a flight risk.

---

[1] *See* TEX. PENAL CODE § 19.02.

On cross-examination, Poe admitted that Grant had convictions for aggravated robbery in 1993,[2] felony theft in 2004, failure to identify to a police officer in 2005, and credit card/debit card abuse in 2009. When asked if he knew about the murder charge, Poe admitted that Grant fled from the scene, that the offense occurred in the Hiram Clarke area, and that Grant had a gun during the alleged murder despite his previous aggravated-robbery conviction.

When the trial court questioned Poe about the murder, Poe responded, "they put [Grant's] name all over the news, talking about how much money he got from his previous case that he was falsely accused of, and you had people that pulled up on him, and one instance, a dude tried to rob him." The trial court stated that it would take judicial notice of the indictment and would rely on the attorneys to give information regarding probable cause. Regarding probable cause, the State alleged:

> So officers found a vehicle that looked to have been involved in an accident; inside the vehicle was the complainant, Edwin Alvaro, with a single gunshot wound to the chest. He was pronounced dead on scene. A convenience store nearby captured the shooting on camera. Video showed a 2007 white Lexus sedan with LP registered to the defendant parked in the store with a male driver. Police officers recognized from name and sight from a previous encounter and had a female in the car. The defendant then left the store and passed the stop sign, crossing the northbound lanes of Hiram Clark[e]. Complainant was driving north on Hiram Clark[e] and struck the defendant's vehicle on the driver's side. Defendant then exited his car and

---

[2]     In his habeas application, Grant also admitted that he had a prior state jail felony conviction for credit/debit card abuse in 2009, a prior state jail felony conviction for theft in 2006, and a prior conviction for aggravated robbery in 1994.

3

immediately shot multiple times into the complainant's vehicle killing the complainant. Defendant then got back into his vehicle and drove away.

In closing, Grant argued that the trial court should reduce his bond to between $100,000 and $150,000, that his parents could not help, and that Poe was the only one who could provide financial support. Grant emphasized that the aggravated robbery happened in 1994 when he was 16 years old while his subsequent offenses were non-violent. Grant repeated that he had family ties to the area and that he could work at Poe's business.

The State argued that based on the factors in setting bond, the $1,000,000 bond was appropriate. The State noted Grant's criminal history, that he had a firearm with him, a propensity to flee, and he had a willingness to lie to police based on his past failure to identify. The State also found the alleged circumstances surrounding the offense concerning because the murder was not the result of an argument between two individuals—but instead, it happened after a random car crash.

> [D]efendant simply got out of his vehicle and opened fire, killing the complainant, which I think goes to the factor that he is a continuous danger[] . . . to the community given his reaction in that situation, as well as his criminal history and propensity for continuing to carry firearms even though he is a convicted felon, as well as lying to police officers in both the failure to ID and committing the offenses such as theft and credit card/debit card abuse, so I think the bond should stay where it is.

At the end of the hearing, the trial court explained that it considered all the factors, noting Grant's prior conviction for aggravated robbery with a deadly weapon

4

and that he was prohibited from carrying a weapon. The trial court emphasized that not only did Grant violate the law by having a weapon, he also was a threat to the safety of the community. The trial court further noted that the offense was a stranger-on-stranger offense, that any citizen of Harris County could potentially be a victim, and that "nothing about the relationship of the individuals or the circumstances of the offense that gives rise to some mitigation that would explain or reduce the threat that Mr. Grant poses to the community."

After recognizing the family's limited resources but noting that it had to consider the safety of the community, the trial court agreed to reduce Grant's bond to $750,000. Grant now appeals that ruling.[3]

## Standard of Review

A trial court has discretion to set the amount of bail. TEX. CODE CRIM. PROC. art. 17.15; *see Ex parte Gomez*, 624 S.W.3d 573, 578 (Tex. Crim. App. 2021). We review a trial court's decision to grant or deny habeas corpus relief under an abuse of discretion standard. *Gomez*, 624 S.W.3d at 578; *see Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981) (reviewing bail pending appeal for abuse of discretion).

---

[3]     We did not request briefing. *See* TEX. R. APP. P. 31.1, 31.2. We interpret appellant's argument that despite the reduction of bail, the reduced bail amount is still excessive.

5

Under that standard, we may not disturb the trial court's decision when it falls within the zone of reasonable disagreement. *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When, as here, a habeas appeal concerns pretrial bail, we may not simply conclude that the trial court did not "rule arbitrarily or capriciously." *Id*. at 593. Rather, we must "measure the trial court's ruling against the relevant criteria by which the ruling was made." *See id*.

In addition, we view the record in the light most favorable to the trial court's ruling. *See Gomez*, 624 S.W.3d at 576. The trial court is the exclusive judge of witness credibility, and we afford it "considerable discretion in making those challenging determinations."[4] When a trial court denies any relief to a habeas corpus applicant, the applicant has the burden of presenting an appellate record sufficient to show that the trial court erred. *Ex Parte Gutierrez*, 987 S.W.2d 227, 230 (Tex. App.—Austin 1999, pet. ref'd). In the absence of a complete record, an appellate court is not in a position to overrule the trial court. *Id*.

---

[4] *Ex parte Everage*, No. 03-17-00879-CR, 2018 WL 1788795, at *9 (Tex. App.—Austin Apr. 13, 2018, no pet.) (mem. op., not designated for publication) (observing that bail cases involve "the difficult task of weighing the specific facts of a case against many, often contravening factors, and often in the face of scant evidence"); *see Esquivel v. State*, 922 S.W.2d 601, 604 (Tex. App.—San Antonio 1996, no pet.) (stating that "[t]he trial court, as the trier of fact, has the job of judging the credibility of the witnesses and the weight to be given their testimony" at bond hearing).

**Bail in Texas**

"'Bail' is the security given by the accused [to ensure] that he will appear and answer before the proper court the accusation brought against him and includes a bail bond or a personal bond." TEX. CODE CRIM. PROC. art. 17.01; *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). The amount of bail should be sufficiently high to give reasonable assurance that the accused will appear, but should not be set so high as to be an instrument of oppression. *Montalvo*, 315 S.W.3d at 593.

**A.     Challenging the amount of bail.**

The right to be free from excessive bail is protected by the United States and Texas Constitutions, as well as the Texas Code of Criminal Procedure. *See* U.S. CONST. amend. VIII; TEX. CONST. art. I, §§ 11, 13; TEX. CODE CRIM. PROC. art. 1.09, 17.15. An accused may challenge the excessiveness of bail by filing an application for a pretrial writ of habeas corpus. *See* TEX. CODE CRIM. PROC. art. 11.24. An applicant for habeas corpus relief must prove his factual allegations by a preponderance of the evidence. *See Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995). The habeas applicant has the burden to prove that the amount of bail set by the court is excessive. *See Rubac*, 611 S.W.2d at 849.

**B.     Factors relevant to setting bail.**

The amount of bail required in any case is within the discretion of the trial court, subject to the following rules:

1. Bail and any conditions of bail shall be sufficient to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be used as to make bail an instrument of oppression.

3. The nature of the offense and the circumstances under which the offense was committed are to be considered, including whether the offense:

   (A)   is an offense involving violence as defined by Article 17.03.[5]

   . . .

4. The ability to make bail shall be considered, and proof may be taken on this point.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant . . . shall be considered[.]

7. The citizenship of the defendant shall be considered.

TEX. CODE CRIM. PROC. art. 17.15.

---

[5]     Article 17.03 provides that murder is an offense involving violence. *See* TEX. CODE CRIM. PROC. art. 17.03(b-3)(2)(A).

Additionally, courts should also consider the following factors: (1) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) the aggravating circumstances alleged to have been involved in the charged offense. *Rubac*, 611 S.W.2d at 849–50.

### *Reasonable assurance that appellant will appear but not oppress.*

Bail must be set sufficiently high to provide reasonable assurance that the defendant will appear at trial, without being so high that it amounts to an instrument of oppression. TEX. CODE CRIM. PROC. art. 17.15; *see Gomez*, 624 S.W.3d at 579. The amount of bail becomes oppressive when it is based upon the assumption that the defendant cannot afford to pay and when it is set for the express purpose of forcing the defendant to remain incarcerated. *See Ex parte Nimnicht*, 467 S.W.3d 64, 70 (Tex. App.—San Antonio 2015, no pet.).

Here, Grant argued below that his bail of $1,000,000 was oppressive because he could not afford to pay it. In support, Grant's brother Poe testified that he was the only family member that could afford to pay and that a $100,000 to $150,000 bond was reasonable. But nothing in our record shows that the trial court

intentionally set a high bail amount to keep Grant incarcerated.[6] Instead, the record

shows that the trial court took many factors into account in setting the bond, most

notably, the safety of the community. In light of the scant evidence in the record,

we cannot conclude that the trial court set an oppressive bond amount.

### *Nature and circumstances of the offense.*

When considering the reasonableness of bail, the nature of the offense and the

punishment that may be imposed are significant. *See Rubac*, 611 S.W.2d at 849.

Here, Grant is charged with murder—a first-degree felony offense. *See* TEX.

PENAL CODE § 19.02(b), (c). The State informed the trial court that after Grant was

hit by another vehicle, Grant exited his vehicle and shot the other driver, the

complainant, who died of his injuries. Grant then left the scene.

The felony offense of murder is unquestionably serious and necessarily

violent in nature.[7] As a result, the punishment range is confinement for life or for

---

[6]     *See Montalvo v. State*, 315 S.W.3d 588, 596 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Our independent review of the habeas corpus record likewise does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent [appellant] from posting bail."); *Ex parte Davis*, 147 S.W.3d 546, 549 (Tex. App.—Waco 2004, no pet.) ("The record contains nothing to indicate that the trial court rendered its decision on this basis [forcing appellant to remain incarcerated pending trial]."); *Ex parte Anderson*, No. 01-20-00572-CR, 2021 WL 499080, at *16–17 (Tex. App.—Houston [1st Dist.] Feb. 11, 2021, no pet.) (mem. op., not designated for publication).

[7]     *See Ex parte Walker*, No. 07-22-00048-CR, 2022 WL 2176306, at *3 (Tex. App.—Amarillo June 16, 2022, no pet.) (mem. op., not designated for publication) ("Murder is unquestionably a serious offense."); *Ex parte Harber*, No. 04-10-00643-CR, 2010 WL 5141509, at *2 (Tex. App.—San Antonio Dec. 15, 2010, no

any term not less than five years, but no more than ninety-nine years and a fine not to exceed $10,000. *See id.* § 12.32 ("First Degree Felony Punishment").[8] The State also elicited testimony from Poe that Grant had a lengthy criminal history. And, as noted by the State and the trial court, Grant's violence was directed at a stranger, thus further jeopardizing the safety of the community.

The serious and violent nature of Grant's first-degree felony murder charge, the potential significant sentence that he faces for that offense, the circumstances of the murder itself, and Grant fleeing the murder scene, thus also weigh against the current bail being excessive.[9]

---

pet.) (mem. op., not designated for publication) ("high bond amount . . . was reasonable" given that defendant was charged with "serious offense" of murder for "causing death of [individual] by shooting him with a firearm"); *Ex parte Chavfull*, 945 S.W.2d 183, 186–87 (Tex. App.—San Antonio 1997, no pet.) (holding $750,000 bail not excessive for defendant charged with murdering individual with firearm given violent nature of crime); *Ex parte Barrera*, No. 11-21-00131-CR, 2021 WL 5934626, at *3 (Tex. App.—Eastland Dec. 16, 2021, pet. ref'd) (mem. op., not designated for publication) (upholding $1,000,000 bond for murder).

[8] *See also Anderson*, 2021 WL 499080, at *13–14 (considering defendant "could ultimately face confinement for thirty years" in concluding "potential sentences [defendant] face[d] . . . weigh[ed] against a determination that the bail amounts set by the trial court . . . were excessive"); *O'Brien v. State*, No. 01-12-00176-CR, 2012 WL 2922545, at *5 (Tex. App.—Houston [1st Dist.] July 5, 2012, no pet.) (mem. op., not designated for publication) (possibility of substantial sentence supported setting of high bail amount).

[9] *See Ex parte Williams*, Nos. 12-18-00174-CR & 12-18-00175-CR, 2018 WL 5961309, at *2 (Tex. App.—Tyler Nov. 14, 2018, no pet.) (mem. op., not designated for publication) ("The . . . severe punishment ranges to which [defendant] may be subjected weigh[ ] in favor of the trial court's decision [to deny defendant's pretrial habeas application and] not . . . reduce the amount of his bonds.").

***The ability to make bail.***

A defendant's ability to make bail is only one factor to be considered in determining the appropriate amount of bail. *See* TEX. CODE CRIM. PROC. art. 17.15(4); *Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980) ("It is established that the ability or inability of an accused to make bail does not alone control in determining the amount of bail."). A defendant's inability to make bail does not render bail excessive. *See Wright v. State*, 976 S.W.2d 815, 820 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

"To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Vague references to inability to make bond, in the absence of evidence detailing the accused's specific assets and financial resources, do not support bail reduction. *Cooley v. State*, 232 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see Wright*, 976 S.W.2d at 820 ("It is well settled that the ability of an accused to make bail does not itself control the amount of bail, even if the accused is indigent.").

Here, other than stating that he was the only family member who could post bail and that he requested bail in the amount of $100,000 to $150,000, Poe did not provide any evidence at the hearing about his specific assets or financial resources, and he did not explain what efforts, if any, were made by Grant to furnish bail in the

12

amount set by the trial court. Grant likewise did not present any evidence of his financial condition or the amount of bail that he could afford. *See Ex parte Anderson*, 2021 WL 499080, at *15–16; *see also Ex parte Childers*, No. 01-21-00493-CR, 2022 WL 2976545, at *7 (Tex. App.—Houston [1st Dist.] July 28, 2022, no pet.) (mem. op., not designated for publication) ("To demonstrate an inability to make bail, a defendant generally must establish that his and his family's funds have been exhausted. Absent such a showing, a defendant usually must establish that he unsuccessfully attempted to make bail before [the appellate court] can determine that bail is excessive.") (internal citations omitted).[10]

Accordingly, based on the limited evidence from Poe and the lack of evidence regarding Grant's financial condition, the trial court could have reasonably determined that the current bail is proper. *See Ex parte Chavful*, 945 S.W.2d 183, 186–87 (Tex. App.—San Antonio 1997, no pet.) (holding that bail reduction

---

[10] *See Ex parte Williams*, No. 03-20-00457-CR, 2021 WL 1583882, at *5–6 (Tex. App.—Austin Apr. 23, 2021, no pet.) (mem. op., not designated for publication) (defendant failed to meet his burden of showing amount of bail was excessive where defendant "presented no evidence regarding any unsuccessful attempts to pay bail or establishing that his funds and the funds of his family members ha[d] been exhausted"); *Ex parte Goodson*, No. 01-15-00288-CR, 2015 WL 1868771, at *4 (Tex. App.—Houston [1st Dist.] Apr. 21, 2015, no pet.) (mem. op., not designated for publication) (defendant did not present any documentary evidence of his assets or financial resources and because of "the dearth of evidence presented by [defendant] regarding his finances," trial court could have concluded that bail amount was reasonable); *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd) ("[I]t [is] incumbent on the accused . . . to show that he . . . made an effort to furnish bail in the amount set.").

unwarranted when, among other facts, defendant put on no evidence of his own individual resources).[11]

### The future safety of the victim and the community.

The State argued, and the trial court agreed, that the facts of the offense show that the safety of the community was of substantial significance. As detailed above, the State presented evidence that after Grant's vehicle was hit by another vehicle, Grant exited his vehicle and shot the other driver. The trial court concluded that because Grant was in possession of a weapon during an offense against a stranger, any citizen of Harris County could be a victim and that Grant posed a threat to the safety of the community.

A defendant's criminal history must also be evaluated in setting bail to determine whether he presents a danger to the community. *Nimnicht*, 467 S.W.3d at 69. The trial court heard evidence that Grant had a lengthy criminal history,

---

[11] *See Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.) (affirming trial court's refusal to lower bond, in part, based on absence of evidence regarding defendant's ability to make bond when defendant's evidence consisted of his testimony that he and his family lacked sufficient assets or financial resources to post bond, and he did not detail either his or his family's specific assets and financial resources nor efforts to furnish bond); *see also Goodson*, 2015 WL 1868771, at *4 (determining that trial court properly could have concluded that amount of bail was reasonable under circumstances because defendant "offered little evidence supporting his claimed inability to make bail"). Even if Grant had established that he could not make bail, which he did not do, that factor would not control over all other considerations. *See Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980).

including convictions for aggravated robbery, failure to identify to a police officer, felony theft, and credit card/debit card abuse.

Considering the facts of Grant's current murder offense and his long and recurring criminal history, the trial court could have reasonably determined that Grant posed a continuing danger to the community. This factor also weighs against the current bail being excessive.

***Other factors.***

Additional factors to consider in reviewing a bond decision include the defendant's work record, family ties, length of residency, past criminal record, conformity with the conditions of any previous bond, other outstanding bonds, and aggravating factors involved in the offense. *See Rubac*, 611 S.W.2d at 849–50.

At the habeas hearing, Poe testified that he and Grant grew up in the Hiram Clarke area but provided scant evidence of Grant's residence history or family ties to the community. Also, the record is devoid of any evidence of Grant's overall work history or any other bonds. Moreover, Grant's significant and recurring criminal history, as detailed above, is a substantial consideration.

Taken together, these additional factors do not weigh in favor of Grant's bond being excessive. Rather, they support the conclusion that the trial court did not act arbitrarily or unreasonably by denying Grant's application to reduce his current bond further. *See Ex parte Davila*, No. 04-19-00276-CR, 2019 WL 4280067, at *2–3

15

(Tex. App.—San Antonio Sept. 11, 2019, no pet.) (mem. op., not designated for publication) (noting that evidence of defendant's inability to afford bail and his family ties to community were not enough to establish bail amount set by trial court was excessive).

In sum, Grant had the burden to demonstrate that his current bail amount falls outside the zone of reasonable disagreement. *See Montalvo*, 315 S.W.3d at 592. Considering the record as a whole, and in a light most favorable to the trial court's ruling, as we must under Texas law, we conclude that Grant has not met his legal burden. As a result, we hold the trial court did not abuse its discretion in setting bail at $750,000.

## Conclusion

We affirm the trial court's judgment on writ of habeas corpus.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).